Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Anne B. Jorgensen and Justice Liam C. Brennan. The case is Number 2-19-1027, In Re Estate of Lois Ries, the Illinois Department of Health Care and Family Services Appellant versus James Ries et al. as Executors of the Estate of Lois Ries of Appalese. Arguing for the Appellant, Valerie Quinn. Arguing for the Appalese, David Nordwall. Thank you. Ms. Quinn, you may proceed. Thank you, Your Honor. May it please the Court, I'm Valerie Quinn, I am here on behalf of the Department of Health Care and Family Services, which is the agency that administers Medicaid funds in the state of Illinois. Can I just ask if everybody can hear me okay? I tend to speak quietly. You sound good, Valerie. Thank you. Your Honor, no one disputes that the Department spent over $212,500 on Mrs. Ries' medical care during the 11 years that she was on public aid. The Department spent over $87,000 on her medical expenses prior to her injury and over $124,000 on her care after she was injured. As the record reflects, the Department compromised its $124,000 lien on the personal injury lawsuit for $20,000. The Estate has never suggested that these amounts were not provided for her medical care. The Department's claim for the remaining $87,000 for her pre-injury care is a valid debt. The Circuit Court's judgment should not stand because it rested on misapprehensions of the law. First, the Circuit Court ruled that the only point at which the Department could assert a claim for Mrs. Ries' pre-injury medical expenses was when it sought reimbursement under Section 1122 of the Public Aid Code for the amounts involved in caring for her after her spinal injury. In fact, the Department could not lawfully have asserted that claim under Section 1122. The third party responsible for Mrs. Ries' injury was not liable for her medical costs that predated that injury. The Circuit Court, in an Estate case, refused to apply Section 513 of the Public Aid Code which pertains to Estate claims. In fact, the Circuit Court ruled that Section 1122 was a more specific provision of the Public Aid Code than Section 513, and that was incorrect. The two provisions are part of the same statutory scheme, and each addresses a different factual scenario. Section 513 is directed solely at claims against Estates, while Section 1122 is directed solely at causes of action for injuries, where the injured person may be living or dead. Section 1122 allows a lien on a personal injury lawsuit, and that lien can later be negotiated and compromised, as it was here. Section 513 places a claim on an Estate, and in that instance there is no provision for Under Section 513, and under the Probate Code, a valid Estate claim gets paid in full unless there is not enough money in the Estate to satisfy it. There is no conflict between these provisions of the Code, and so there is no need to choose between them. That is one of the things that makes this case unlike the Hernon case that the Estate cited, where there were two conflicting statutes of limitations, one an umbrella for all personal injury claims, and one narrower provision for personal injury claims involving construction projects. In this case, the Circuit Court's second mistake was in assigning significance to the source of the funds in the Estate, because nothing in the statutory framework makes the source of the Estate funds relevant. In fact, Section 18-14 of the Probate Act states that all property in a decedent's Estate is subject to claims without distinction, and that would seem to indicate that it doesn't matter where the property came from, if it is in the Estate, it is subject to valid claims. Circuit Court here essentially drew on its equitable powers to dispense with the requirements of the statutes, and that is impermissible. Perhaps the infirmity of the Circuit Court's ruling that the source of the Estate funds controls here can be illustrated by the following hypothetical. Let's assume that the Department paid for none of Mrs. Reese's medical care until she was injured. Let's also assume that the Department settled its lien on her personal injury lawsuit, which means that it was reimbursed for its expenses from date of injury through date of recovery of that money. If she were still alive when she recovered that money, the Department would continue to pay her medical expenses, assuming that she was Medicaid eligible, and as an aside, her settlement could have been structured so that she would continue to be Medicaid eligible. So, let's assume she survives, is able to use some of that money, continues to have her Medicaid benefits, and then she dies. Upon her death, the Department would have the right and the duty to seek reimbursement for those post-recovery medical expenses under Section 513. Would the Estate still be able to argue that the Department had already settled any claim on those proceeds? Because by framing it that way, that the funds in the Estate were traceable to the lawsuit and therefore untouchable, logically the answer would have to be yes, even though those post-recovery medical expenses had not been spent or even calculated by the time of the settlement, and that would be absurd. As the record reflects, a claim for expenses owed to the State of Illinois is a sixth-class claim under Section 1810 of the Probate Act. According to Section 1810, there is a strict hierarchy of payments, and obviously, valid claims in Classes 1 through 5 would take priority over the Department's claim. For example, there could be an outstanding claim for Mrs. Reese's funeral expenses, as well as the costs of administering her Estate. Both of those are first-class claims that would take priority over the Department's claim. In fact, should allay the Estate's stated concerns about reimbursement for its costs of establishment and administration, if the Department were to prevail in this appeal, it would simply resume its proper place in the hierarchy of payments under the Probate Act. As a practical matter, the Department would be partly but not fully reimbursed, given the priority of administration expenses of the Estate and the fact that the amount in the Department's valid claim. And if there is not enough money in the Estate to pay all of the claims in full, then there necessarily will not be anything left over for the Estate's heirs unless they qualify for some special statutory protection. But that's not unfair. Public policy favors lessening the burden on taxpayers and enabling the Department to assist others who need help with their medical expenses, just as Mrs. Reese did. Your Honors, I don't believe I've used up all my time, but I'm very interested in what the Court's concerns may be. So I would like to open it up for questioning at this point, if I may. Thank you. Justice Jorgensen, do you have any questions? Yeah, I do. You spoke about the differences between 1122 and 513, and your position is each of them controls a certain portion of these proceeds, almost to the exclusion of the other. Is that a fair statement? Each section targets a different factual scenario. Right. So, and you suggested that the Department could not negotiate away its 513 claim. Is that your position? No, it could not have pursued the portion that it was its 513 claim as part of its lean on the lawsuit, because that third party wasn't responsible for Mrs. Reese's routine medical expenses that predated her injury. I get the distinction, but are you saying just as policy that the Department would never, or is precluded from, say, negotiating, they were claiming, I think, a total of 124,000, give or take, and they settled for 20. Could they have suggested, we'll take, I'm just going to pick a number, we'll take 50, and then we will not pursue anything under 513. Is that something that the Department could have done? Oh, could have done. Yes, could have done. But there's absolutely no evidence in this record that the Department did so. Yeah. But, Mike, you seem to indicate that they would be precluded from that, and I was wondering how you got there. Oh, I didn't mean to suggest they would have been precluded from simply relinquishing any claim on those proceeds. It's just that they couldn't fold it into a lean on the personal injury lawsuit. But they could have negotiated it, given the low numbers here anyway. There's no way you were ever going to recover the total amount. No. Right. Okay. All right, that was really my question. Justice McClaren, I have nothing else. Thank you. Justice Brennan, do you have any questions? Thank you, Justice McClaren. Let me just ask, when are 513 claims typically made, if that question can be answered? They're estate claims. They are solely when a recipient of public funds has died, leaving some money in her estate. All right. So they're only against decedent estates. Fair enough. That's my only question. Thank you. Thank you. Thank you. Ms. Quinn, what, if anything, documented in writing the agreement relative to the release of the lean on the personal injury litigation? I'm sorry, Your Honor, I didn't fully hear that question. What documents, if any, in writing, emails, releases, satisfaction, discharge, whatever, indicated what the agreement was insofar as the nature and extent of the release of whatever liens were in question? The only thing in this record, this is the probate case, there was a whole separate personal injury case, as the court, I'm sure, understands. In this case, the only record we have is the letter in the supplementary volume of the record stating that the department was settling its lean on the lawsuit for $20,000. If there were any other communications about what was being settled, those are part of the personal injury case and not this estate case. And frankly, Your Honor, if there were any evidence that the department had ever communicated that it was relinquishing its claim to the pre-injury expenses, that, we might expect to see that in the settlement agreement, which was never introduced in this case. We might expect to see any writings introduced, you know, the estate might have attached them to its circuit court filings in this case, if there were any evidence of that. The fact that there are no affidavits, written communication, no settlement agreement, nothing was introduced in this case to indicate that the department had ever communicated an intention to relinquish its claim, I think suggests that there was no such evidence to offer. Thank you. I have no further questions. Does the panel have any other questions? I do not. Thank you. I do not. Thank you. Thank you, Your Honors. Thank you. You will have an opportunity to make rebuttal. Thank you. Mr. Norvall? Yes. You may proceed. Thank you. Good morning. I represent Petitioner Appellees James Reese and Joseph Reese as co-executives of the estate of Lois Reese. It is undisputed that the $80,819.04 in funds that are currently in the estate and are at issue in this case are the remainder of the settlement proceeds of the medical malpractice lawsuit. It is also undisputed that the department already asserted and resolved its claim on these lawsuit proceeds for $20,000 and that that amount has been paid. It is also undisputed that the only reason the medical malpractice lawsuit settled, meaning the only reason there are currently any funds in the estate at all, is because the department agreed to resolve its claim on the lawsuit proceeds. Had the department not agreed to compromise its claim on the lawsuit proceeds, the lawsuit would not have been settled, and because of causation issues, there was a very good chance that the medical malpractice case would have ended in a defense verdict and there would have been nothing received by the department. Not $20,000, nothing. Based upon these undisputed facts, the trial court's findings that the department is not entitled to a second bite of the apple by asserting a second claim on the same settlement proceeds is proper and correct. The department argues that the trial court erred because its claim on the estate proceeds is based upon Section 513 of the code, which allows for claims against an estate, and that this is different than Section 1122 of the code, which allows for claims against the proceeds of a personal injury lawsuit. But these sections are part of the same public aid code, and this court must read and interpret them together. The trial court properly did this by finding that Section 1122 was the more specific statute that applied to personal injury lawsuit proceeds and Section 513 applied to all other assets of the estate. Because the department resolved its claim under Section 1122, it resolved its claim over the personal injury lawsuit proceeds, including the proceeds that were deposited into the estate as part of the lawsuit settlement. Nothing in Section 513 indicates that the department is entitled to a second claim on the same pot of money, the same lawsuit proceeds. In one of the cases cited by the department regarding statutory interpretation, this court explained in the Dundee Township versus Department of Revenue case from 2001 that it is, quote, presumed that statutes which relate to the same subject are governed by one spirit and a single policy, unquote. That is exactly what the trial court did in finding that Section 1122 applied to the lawsuit proceeds and Section 513 did not. The department's interpretation of Section 513 improperly ignores the language, spirit, and intent of Section 1122. Section 1122 is clearly a more specific statute than Section 513. As Section 1122 applies to only one specific source of funds, causes of actions for personal injuries, while Section 513 is much broader. Section 1122 is clearly more specific and thus takes precedence over Section 513 here. The department claims that the two statutes are not directly inconsistent because its claim under Section 1122 only applied to the charges that were made from the date of the injury that was the subject of the lawsuit until Ms. Reese's death, while its amended claim under Section 513 only sought to recover the amounts that were paid before the date of the injury. But under the department's interpretation of the statutory scheme, it did not need to do this. It did not need to file that amended complaint. If the department is correct that Section 1122 and Section 513 are wholly independent from each other, then a resolution of the claim under Section 1122 would have no effect on the separate and independent claim for lawsuit proceeds under 513, other than a setoff for the funds that were actually paid, which in here would be $20,000. This is because the focus of Section 513 and Section 1122 is only on the sources of the lawsuit, and they don't say anything about extinguishing any other claims. The department's interpretation in this case effectively disregards Section 1122, even though that section clearly addresses the department's claims on lawsuit proceeds. The only way to fairly reconcile the two statutes and to give meaning to both is to follow the approach of the trial court and find that Section 1122 applies to personal injury lawsuit proceeds, including those proceeds that were deposited into the estate as part of the lawsuit settlement, and that Section 513 applies to any other sources of funds. This is consistent with the department's statement before the court that each section targets a different scenario. The scenario before the court in this case is the section that is targeted by Section 1122, because the funds at issue are settlement proceeds from a personal injury lawsuit. This interpretation does not conflict in any way with the federal statute that the department claims it requires to seek to recover payments, because the department did assert a claim on the lawsuit proceeds and received $20,000 from the lawsuit settlement instead of zero, which might have happened if the case went to trial. In this case, there were no other funds that were recoverable in the estate, something that I assume happens a lot for persons who are on public aid. The department similarly was not forced to abandon any claim. The department chose to resolve its claim on a lawsuit proceeds so that a settlement could be affected and the department could receive some funds, and it still had a claim against the estate for all other assets. It just so happened that there were no other assets here. The ruling of the trial court was appropriate and fair and did not punish the state in any way. Indeed, in their briefs, they refer to the $81,000, if it would go to the estate, to be a windfall. And it's important to be clear here that the settlement proceeds represent the compensation for Lois Reese's injuries, which caused her to be quadriplegic for the last four and a half years of her life. The estate representatives, James and Joseph Reese, witnessed their mother's injuries and prosecuted the medical malpractice lawsuit for years after she died. A recovery of $80,000 to be shared by Lois' next of kin as compensation for the pain, suffering, and disability the last four and a half years of Lois' life is not a windfall and, honestly, does not fully compensate Lois or her loved ones for the personal injuries that she suffered. Unfortunately, that was all that was available in her lawsuit. The department recovered $20,000 that it otherwise would not have received if the lawsuit was not prosecuted and settled. Similarly, if the lawsuit had not settled, there was a good chance the department would receive zero. If anyone received a windfall or benefited in this case, it is the department. They took no risk with the lawsuit. They did nothing to prosecute the case. They never advised plaintiff's counsel during negotiations that they were going to continue to assert a claim on the lawsuit's proceeds if the case was settled. They collected $20,000 for doing nothing to prosecute the case and now want an additional $81,000, all of the money in the estate. It's not fair and it's not right. Finally, if the department is entitled to anything, which it is not, any amount that it receives must be reduced at least by the procurement costs under the principles of unjust enrichment and the common fund doctrine. For these reasons and the reasons in the brief, Your Honor, we request that the trial court's finding be affirmed and are happy to answer any questions you may have. Thank you. Justice Jorgensen, do you have any questions? Yes, I do. What were the terms of the agreement between counsel for Lois and the department? Yeah, and this was talked about at the hearing, at the first hearing before the trial court. And you can find it on pages 16 and 17 of the record. The estate counsel contacted public aid and said that they needed help to settle the case and that public aid needed to reduce its claim on the lawsuit proceeds in order for the case to settle. And then as counsel indicated, the supplemental record contains a document, a written letter from the department saying that we've agreed to reduce our lien to $20,000. So the negotiations were. No, no, counsel, I didn't mean to cut you off, but I don't want to know what the negotiations were. I want to know what the agreement, what does the written agreement, because it appears we only have that letter. What does it say? The agreement says that they would reduce their lien and accept $20,000 in settlement for the injuries related to the accident. So how does that preclude lifetime expenses that the department expended? Because the letter extinguishes their lien under Section 1122. So it extinguished their lien on the lawsuit cause of action. The lawsuit cause of action, the settlement was $20,000 went to the estate. Right. But the agreement was we're settling for the injuries as a result or the expenses paid as a result of that injury. Is that what the agreement was? Yes. Well, the agreement was to resolve their claim under Section 1122. Yes. Which is to recover for the to reduce the claim for the amounts that they paid for her personal injuries to $20,000. Yes. Then I assume there were other entities that were paid out of the proceeds from the lawsuit. Correct. Medicare was paid. All right. So then that money, the balance belonged to Lois or would have belonged to Lois. Is that correct? Correct. As part of the settlement. Yes. Okay. And so when she lied, those dollars went into her estate. Is that also correct? Yes. And then tell me why that money, once it becomes the property of her estate, is not subject to 513. Because the only reason the money exists, the only reason $80,000 was deposited into that account is because there was a settlement of the lawsuit. Those funds are just lawsuit proceeds, are proceeds of the lawsuit. They went directly into the account because they have to do that. Right. Okay. How do we reconcile the language in the Probate Act that says there is no distinction as to the source of monies in an estate, but that once the money is in an estate, it goes by the debtors or creditors? It's a class system and it's a very strict hierarchy. How do we reconcile that? I'm not sure if you do, because I don't think you go that far, Your Honor, because we're still stuck with the language of 1122 versus 513. So you're assuming that 513 already applies. And I would agree with Your Honor that once, if it was, I don't know, any amounts that were in there from a savings account or an investment or whatever was in there, you don't divide it out. But in this case, it's not some specious suggestion, oh, we don't know where all these funds came from. We know these funds came exactly, they came at the exact same time that the department agreed to accept $20,000 on the lawsuit claim. Counsel, you've said that about six times, I get it. But my question is, for example, if this money is all from this personal injury suit, how do we look at the Probate Act and say, well, because it came from the proceeds of a personal injury claim, anyone who's involved in that can't come in later? For example, what if one of the physicians who had treated her said, oh, I have a late bill, and I'm going to file it against the estate, would they be precluded? They would, well, I'm sorry, it depends. They would not be precluded if as part of the settlement, their claim had not been negotiated. If their claim had been negotiated, and they had said, I'm agreeing to accept $20 for my bill, for my bills, then they couldn't come in later and say, oh, I got another bill, and I have another bill and another bill. So they couldn't come in that way. So it depends. You're right, that was a poor example. I liked it, Your Honor. Okay, fair enough. Tell me why public policy does not favor the department here. Because they did already receive compensation. If we hadn't settled this lawsuit, the department would get nothing. Public aid would get nothing. The only reason there were any funds in the estate is because public aid agreed to resolve its claim for $20,000, and so it received $20,000. All right. If public aid is going to turn around any time there's a personal injury lawsuit, which involves a plaintiff who dies, and after the plaintiff believes they adjudicated the claim on the lawsuit, and then are dispersing the funds, and all of a sudden public aid comes in again and reaches, says, I want more, I get more, it's going to discourage the settlement of lawsuits. And that's not in the public interest either. Especially in a case like this where liability was really, there was a real causation issue. Right, but I mean, if that were the case, shouldn't that have been included in the agreement? I mean, clearly you were aware there was monies paid on Lois' behalf prior to this injury, this horrific injury. So if you were aware of that, why not include that in the agreement that resulted in a payment of $20,000? Because plaintiffs thought, plaintiffs' counsel, candidly, they thought it had been, it was all incorporated, that their claim, that they resolved all claims on the lawsuit proceeds. Do we go by plaintiff's attorney's understanding or what the letter says? Well, the letter says they were resolving their claims on the personal injury lawsuit, so it's really one and the same. Depends on how you look at it, I suppose. That's absolutely true, Your Honor. It's one and the same to me. Yeah, I get you. I certainly understand your perspective. Justice McClaren, I have no other questions. Thank you. Thank you. Justice Brennan, do you have any questions? I guess my question is related to what Justice Jorgensen just ended with. 1122 allows the Department to essentially have a charge that relates to monies they've expended, quote, from the time of injury to the date of recovery upon such claim. So that's what 1122 is talking about. Certainly, the parties could, if they chose, negotiate, you know, potential 1513 claims, which aren't ripe until she dies, but that could be negotiated. The Department has conceded that in their argument. But absent you pointing the court to an agreement that demonstrates that, I'm having a hard time understanding why your proceeds argument should rule the day. It seems to me you're just asking for equity to trump the statute. So I'm just taking a minute to respond, Your Honor. I apologize for the delay. The section 1122 talks about claims on personal injury lawsuits. The amount of the claim is based upon the amounts paid from the date of injury until the date of recovery. But the language of 1122 itself just talks about claims, all claims on personal injury lawsuits. So I'm not sure I'm answering your question here, but there's nothing in section 1122 by itself that says resolution of that claim extinguishes all amounts paid after the date of injury or date of recovery. Rather, it's just focusing on the source of the claim, which is the personal injury lawsuits. And so our position is that the funds at issue here are personal injury funds. So it's governed by 1122. And I apologize. I'm guessing I did not answer your question, and I apologize. I guess my point is the focus of 1122 is the care provided from the date of the injury to the date of the settlement. And it's unique because it allows the department to recover money before Lois dies, which they can't do under 1513. And absent an agreement addressing 1513 claims, I don't see how 1122 bars those claims. I guess that's maybe more of a statement than a question, but that's my concern. Okay. And then I would say that then we would have to fall back on equity. But how does equity trump a statute? Well, you can certainly do it through a process of estoppel, which I sort of talked about before, where the Estates Council contacted Public Aid and said, I need your help. We need to resolve your claims, all your claims on the lawsuit proceeds. And as a result of that, there was a settlement, which resulted in $20,000 to the department. And that if they had not made any type of agreement, if there had not been an agreement, there would not have been any settlement, there'd be no money at all. So it could be through an estoppel process. Is it your position... And we have that in our brief. Let's say that Lois did not die, and she lived another six years. Is it your position that this settlement would also have precluded the department from recovering post-settlement care under 1513? Do you understand my question? Yeah, no, I do understand your question. And give me an example, like six years out. Well, whatever, say it's $20,000. And I think the department can answer this. I'm not sure it's a fair hypothetical, because if, for example... It's my hypothetical, and I'm curious what your answer is. Okay, well, I just don't think it's going to happen, because if there's money to pay for her own care, then Public Aid wouldn't be paying. I'd say $80,000 might not prompt someone to kick her out of the facility. Let's assume that happened. Let's assume there's only $30,000 left. Would... Our position would be that if it's directly attributed to the... If it's directly attributable to the personal injury lawsuit, that 513 would not apply. If she then invested it and things like that, then it's really not directly attributable anymore. But it's not like this case where the money was literally dropped in right away, and then they claimed it right away. All right, thank you. I have no other questions. Thank you. Counsel, have you ever heard of the term fungible? Yes. Money is considered to be fungible, because a dollar can be exchanged for another dollar. Probably at one time, that wasn't true, because there were such things as silver certificates, but no longer. And the definition of fungible is that typically money that is raised for one purpose can be easily used for another. And it seems like your argument is based upon the little song about one of these things is not like the other. And so my question is, how is it that money, which I believe was what the settlement was, is so unfungible, insofar as your argument is concerned, that we should affirm the trial court's findings that inherently or implicitly that these funds were not replaceable or could not be used for other purposes? Because the focus of 1122 is the source of the funds. So it's not the money itself, but it's the source of the money. And that's what our argument is based upon. So we're not claiming that money itself isn't fungible, because of course it is. A dollar is a dollar is a dollar, like you said. But the focus of 1122 is the source of the funds. And that's the basis of our argument. Even if there were a... Did you hear my question to Ms. Quinn relative to whether or not there was a release or a satisfaction and discharge or anything like that? Yes. And I agreed with her answer. I don't... There is no satisfaction of judgment entered. So I don't know the answer. It's not the most customary thing. Usually it's just where they agree to resolve the lien or claim. That's usually enough. But I do not know the answer. I apologize. But I agree with counsel. There is nothing in this record which contains the satisfaction of judgment or something like that. Akin to Justice Brennan's hypothetical scenario, do you agree that a release does not release anyone from torts or breaches of contract that happen in the future? Yes. Okay. And if that's the case, then why in his scenario wouldn't the department be allowed to collect expenses after the settlement of the litigation? Even if there was a release, how can that release affect future incurrence of debt? Yeah. Yeah. I think when pointing that out, I would agree with your honor and that it would not affect future payments. But we're of course talking about past. Okay. I have no further questions. Does the panel have any other questions? I do not. I do not. Thank you. Thank you. Thank you, sir. Ms. Quinn, you have five minutes for rebuttal. You may proceed. Thank you, your honor. I have two brief points. First of all, with respect to the size of the award, there is no evidence in the record such as an affidavit that the only reason that this case settled was because the department agreed to reduce its lien. And it's also helpful to remember that the action against these medical providers was a personal injury action, not a wrongful death action. The amount of the settlement may have affected a number of things other than the claims merit. It might have reflected, for one thing, the fact that Mrs. Reese was no longer alive to need a pool of money to help with her expenses that Medicaid doesn't typically cover. It doesn't mean that the claim against the medical providers was weak. A jury hearing about her injuries and how she spent the last five years of her life could well have awarded her much more. We'll never know. Secondly, the estate thinks that the situation as it is, if the department were allowed to collect for the pre-injury medical expenses, that that is somehow unfair and against public policy. Actually, Mrs. Reese accepted medical benefits from the state of Illinois, and the department used taxpayer funds to pay her medical expenses for 11 years for a total of $212,500. That is money that her adult sons did not have to pay. And they were also able to have the peace of mind that comes with knowing that their mother's many medical needs were being paid for. The department now has the right and the duty to seek whatever reimbursement is possible so that it doesn't lose its federal funding and so that money will be available in the state coffers to help other medically needy low-income people just like Mrs. Reese. That was pretty much all I had in rebuttal unless the panel has questions. Thank you. Justice Jorgensen, do you have any questions? I do not have anything further. Thanks to both counsel for great arguments. Thank you. Justice Brennan, do you have any other questions? I do not. Thank you very much. I don't have any other questions either. The case will be taken under advisement and a disposition rendered in apt time. Mr. Clerk, you may close the proceedings.